UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MANJIT BEDI,<br>Defendant. | CASE NO. 3:26-cr-5106-TMC<br><br>DETENTION ORDER RE: VIOLATION OF CONDITIONS OF BOND |

THIS MATTER comes before the Court for a hearing on alleged violations of pretrial release. The Government moved to revoke the pretrial bond, based on three petitions filed by the United States Pretrial Services Officer (Dkts. 16, 25, 26, 27, 28), asserting five violations of the conditions of supervision on the pretrial bond (Dkt. 12). The Pretrial Officer, and the Assistant United States Attorney, recommended revocation of bond, and detention. Dkt. 24.

Mr. Bedi stands charged with six counts of Wire Fraud, and five counts of SNAP Benefits Fraud. Dkt. 1. The Indictment alleges that as to counts 1 through

6, he stole SNAP benefits by stealing and redeeming at least $600,000 from electronic benefit transfer cards, fraudulently acquiring "funds intended to feed impoverished families". Dkt. 1, Indictment, at 1-2. The Court held the initial appearance hearing for revocation of bond on October 16, 2026. Dkt. 24. The Court held another initial appearance hearing, and a hearing on the motion to revoke bond, on October 27, 2026. Dkt. 29. The Government appeared through Assistant United States Attorney Victoria Cantore. The defendant appeared personally and represented by counsel, Lindsay McCaslin, Assistant Federal Public Defender.

The violations numbered 1, 2, 3, and 4 (Dkts. 16, 25), are allegations of conditions while violation 5 is an allegation of a new federal felony (Dkt. 27): false statement, under 18 U.S.C. § 1001(a)(2).

To revoke a person's release and order detention under 18 USC § 3148(b), the Court conducts a hearing based on a two-step inquiry. "First, the Government must show that the person violated their release conditions: either (A) 'probable cause to believe that the person has committed a Federal, State, or local crime while on release'; or (B) 'clear and convincing evidence that the person has violated any other condition of release.' 18 USC § 3148(b)(1)." *United States v. Desmond,* No. 2:22-cr-00188-TL, 2023 WL 4052415 (June 16, 2023) at *2.

If the Court finds probable cause to believe Mr. Bedi committed a felony offense while on release, a rebuttable presumption that no condition or combination of conditions will assure community safety, would apply. 18 USC § 3148(b). Under this statute, if Mr. Bedi produces some evidence to rebut the presumption then the Court

does not directly apply it but the Court may still consider the presumption in the ultimate determination.

If one of these criteria are met in step one, then as a second step under 18 U.S.C. § 3148(b)(2): "the Government must show [footnote omitted] the person's likely conduct if they are released again". *United States v. Desmond*, at *2. The Government must prove either:

A. "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community," and the Court must consider the factors in 18 U.S.C. § 3142(g); or,

B. "the person is unlikely to abide by any condition or combination of conditions of release."

The Bail Reform Act does not specify the government's burden of proof as to the second step. See *United States v. Manafort,* 897 F.3d 340, 344 n.1 (D.C. Cir. 2018) (affirming revocation of release without addressing standard, adding that 'district courts would be well advised to state the standard of proof being employed on the record in future circumstances").

Here, in step one of the analysis, the Court finds by clear and convincing evidence that he has committed violations 1 through 4; and, the Court finds as to violation 5, finds probable cause to believe that Mr. Bedi has committed a federal felony offense.

As for violation 1, the record shows that Mr. Bedi failed to surrender his enhanced Washington State I.D. document, or his passport, as directed by the Court and by U.S. pretrial services. Dkt. 16, petition and report of U.S. Pretrial Services Officer Chandra Wageman.

As for violation 2 the record shows Mr. Bedi did not contact his assigned U.S. Probation Officer as directed, on May 15, 2026 or on May 20, 2026. Dkt. 16.

As for violations 3 and 4, the record shows that on April 26, 2026, Mr. Bedi left the United States and entered Canada, crossing the border at Blaine, Washington. Dkt. 25, 26, supplemental petition and report of U.S. Pretrial Services Officer Wageman, and Government's Ex. 4, 5. The record also shows that he was arrested in India in October 2026. Dkt. 25, 26. During the hearing, the defense admitted that at the time he was apprehended, he was living in a family home in India. On June 20, 2026, Mr. Bedi and his spouse executed a quitclaim deed (from India) and transferred ownership (the deed was recorded on June 24, 2026) of their home in Kent to their son (the residence and address Bedi had given to pretrial services during the intake process in April 2026 before he fled to Canada). Dkt. 25, 26, and Government's Ex. 6.

As for violation 5 the record shows there is probable cause to believe Mr. Bedi committed the felony federal offense of false statement because he "knowingly and wilfully" made a "materially false, fictitious, or fraudulent statement or representation" and this occurred in a "matter within the jurisdiction of the . . . judicial branch of the Government of the United States." 18 U.S.C. § 1001(a)(2). The Court found probable cause that the violation of this condition of supervision occurred, Dkt. 27, based on the information provided by Officer Wageman of U.S. Pretrial Services, Dkt. 27, 28.

Officer Wageman stated that Mr. Bedi told (with the assistance of a Punjabi interpreter) U.S. Probation Officer Tiana Keomalu on April 21, 2026, that he had a passport in his home. The next day, on April 22, 2026, Mr. Bedi made a statement (with the assistance of a Punjabi interpreter) after the hearing in which the Court determined he would be released on bond, to U.S. Probation Officer Jaymie Parkhurst. He had

been informed (with the assistance of a Punjabi interpreter) about each of the conditions of pretrial release and that included "no law violations", and the requirement to surrender all passports and travel documents. Mr. Bedi told Officer Parkhurst that the passport was in his son's safety deposit box, his sone was out of town, and would not return for two weeks. Officer Parkhurst accepted this explanation, and Mr. Bedi was directed to give his passport and enhanced Washington State I.D. document to pretrial services on May 11, 2026. Dkt. 28.

Four days later, on April 26, 2026, Mr. Bedi and his passport, along with his son Manpreet Singh, went into Canada, crossing the border at Blaine, Washington. And Mr.Bedi took a flight to India, as the Government proferred in its documentation. See Government's Ex. 3 (United States Department of Agriculture, Office of Inspector General, report (8-11-2026), Ex. 4 and 5, Record of Manjit Singh Bedi crossing the border from the U.S. to Canada on April 26, 2026, at 4:34 pm Pacific. Mr. Bedi later transferred ownership of his home in Kent, Washington to his son, a conveyance that was officially recorded on June 24, 2026. Government's Ex. 6. This series of events establishes probable cause to believe that, in connection with this Court's initial appearance hearing and bond order in this matter, Mr. Bedi was intending to leave the U.S. and that statements he made that were relied upon by U.S. Probation Officers, were willful, knowing, materially fictitious, false, and fraudulent.

In step two of the analysis, the Court's primary holding is that, the government has shown by clear and convincing evidence that Mr. Bedi is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b)(2). United States v. Jefferson, No. 2:23-cr-00109-LK, 2024 WL 5077219 (December 10, 2024) at *2. Mr. Bedi surreptitiously slid across the border between the U.S.

and Canada and boarded a flight from Vancouver, British Columbia to Delhi, India. Dkt. 25, 26, 27, 28, Government's Ex. 4-7. The Court has made a finding of probable cause to believe that he made false statements to a federal pretrial services officer. The false statements misled the pretrial services officer, and the federal officer's reliance on his false statements allowed Mr. Bedi to manipulate others and obtain time to cross into Canada in the company of his family, and take a flight to India, using his passport.

The Court also considered the presumption as a result of the probable cause finding as to violation 5, and the relevant factors under 18 U.S.C. §§ 3148(b)(2) and 3142(g). Mr. Bedi produced some evidence to rebut the presumption, because he showed significant family ties in the community, and he showed that his family was willing to house him and provide a third party custodian.

As for the four factors: 1. Nature and seriousness of the charges; 2. Weight of the evidence against the defendant; 3. History and characteristics of the defendant; and 4. "Nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4), the Court considered each of these factors. The Bail Reform Act recognizes that release should be the normal course, and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987). In evaluating whether the defendant poses a serious potential for dangerousness, it is unnecessary for the government to produce, or for the Court to rely on, evidence of prior convictions for violent crimes. *United States v. Hir,* 517 F.3d 1081, 1091-92 (9th Cir. 2008).

The Court recognizes the language of the bond revocation statute,18 U.S.C. § 3148, is different from the language of the 18 U.S.C. § 3142. *See, United States v. Dezfooli,* No, 2:22-cr 00142-RFB-BNW, 2023 WL 8003277 (D. Nevada Nov. 16, 2023). At initial appearance during the first hearing in April 2026, the statutory language required the Court to determine whether it is "reasonably assured" that conditions of release would mitigate the risk of flight or risk of danger to the community. But under Section 3148, the language does not include the word "reasonably". This Court finds there is no condition or combination of conditions that would assure Mr. Bedi's appearance for hearings or trial, or that would mitigate the risk of economic danger to the community. The violations admitted by the defendant are serious. Pretrial services recommended detention at the time of initial appearance in April 2026, the government did not make a motion for detention at the time of initial appearance, and the Court ordered Mr. Bedi to turn over his passport and his enhanced driver's license to pretrial services. As discussed above, the record shows that Mr. Bedi made false statements, failed to contact his pretrial services officer, surreptitiously slipped across the Canadian border, and fled the U.S to set up his home in India a few days after he was released on bond.

The Court considered alternatives to detention that were proffered by the defense, such as in-home detention, electronic monitoring, and a third party custodian. The Court also considered whether additional supports — such as potential placement with his family, or GPS monitoring of Mr. Sasso's location – would mitigate the risk of flight or non-appearance and mitigate the risk to the

safety of others and the community. The Court finds by a preponderance of the evidence that the defendant poses a risk of flight or non-appearance, based on failure to follow the Court's orders, and the charges of conduct described in the Indictment, indicating that Mr. Bedi stands charged with multiple offenses involving fraudulent business activity and stealing funds from a government program intended to feed indigent persons; and that he deliberately misled the pretrial services officer and probation officers, by claiming that he did not have access (and would not have access for two weeks) to his passport or enhanced driver's license.

The Court also finds by clear and convincing evidence that the defendant poses a risk of danger to others or to the community and there are no conditions or combination of conditions that would assure the Court that the risk would be mitigated if Mr. Bedi was released on bond again. The offenses charged in the indictment indicate Mr. Bedi engaged in widespread fraud, to the detriment of a program designed to provide food to persons who are indigent. These facts indicate "an articulable threat posed by the defendant to an individual or the community." *See United States v. Munchel,* 991 F.3d 1273, 1282 (D.C. Cir. 2021) (quoting *Salerno,* 481 U.S. at 751).

Even with conditions by which the defendant's whereabouts could potentially be monitored, the Court finds that there are no conditions of release that would assure the Court that supervision would mitigate the risk of flight or non-appearance, or the risk of dangerousness to others or to the community.

It is therefore **ORDERED**:

(1) Defendant's pretrial bond is revoked; he shall be detained and committed to the custody of the Attorney General for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences, or being held in custody pending appeal;

(2) Defendant shall be afforded reasonable opportunity for private consultation with counsel;

(3) On order of a court of the United States or on request of an attorney for the Government, the person in charge of the correctional facility in which Defendant is confined shall deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding; and

(4) The Clerk shall provide copies of this order to all counsel, the United States Marshal, and to the United States Probation and Pretrial Services Officer.

Dated this 29th day of October 2026.

Theresa L. Fricke
United States Magistrate Judge